Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2317 | **DATE** | 8/3/2001 |
| **CASE TITLE** | Richard A. Arrandt D.C., et al. vs. Steiner Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss [24] plaintiff's RICO claims (Counts I-II) is granted and the pendent state law claims (Counts III-VII) are dismissed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 6 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/3/2001 | |
| MD | courtroom deputy's initials | 01 AUG -3 PM 5: 47 | date mailed notice MD mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD A. ARRANDT D.C. d/b/a ARRANDT HEALTHCARE AND REHABILITATION CENTER, individually and on behalf of all others similarly situated, ) ) ) ) ) ) Plaintiff, ) ) v. ) STEINER CORPORATION d/b/a ) AMERICAN LINEN, ) ) Defendant. ) | Case No. 00 C 2317 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard A. Arrandt D.C. d/b/a Arrandt Healthcare and Rehabilitation Center ("Arrandt"), has brought an amended class action complaint against defendant Steiner Corporation d/b/a American Linen ("Steiner"), alleging in Counts I and II violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), in Count III violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, in Count IV violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*, in Count V breach of covenant of good faith and fair dealing, and requesting in Count VI declaratory and injunctive relief and in Count VII imposition of a constructive trust. Defendant has moved to dismiss Counts I and II pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and dismiss the remaining state law counts for lack of supplemental jurisdiction pursuant to Rule 12(b)(1) and 28 U.S.C. § 1367(c). For the reasons set forth below the court grants the motion.

30

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 101, 102 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996).

## FACTS

The amended complaint alleges the following facts, which are accepted as true for the purpose of this motion: Arrandt, a healthcare provider, contracted with Steiner, a provider of uniforms and linens, for its linen supplies from on or about April 25, 1997. Steiner delivered linen supplies to Arrandt and billed Arrandt weekly for those supplies. Beginning in May, 1997, the invoices issued to Arrandt contained an eight percent (8%) "Environment Charge." The Environment Charge, which is not a tax, is a separate line item charge and is listed on the invoice directly above an authorized tax. Steiner has adopted the charge in same or similar form to its customers nationwide, except in Alaska. Arrandt alleges that the Environment Charge is deceptive because its name and placement on the invoice with authorized charges, implies that it is required and authorized by federal or state law. Indeed, in March of 2000, Arrandt called

Steiner to inquire about the nature of the charge and Steiner advised Arrandt that the government imposed the Environment Charge. Arrandt alleges that contrary to Steiner's representations, Steiner collects the monies from the charge and recognizes it on its books as revenue and that the Environment Charge is a fraudulent scheme concocted by Steiner to increase its revenues. Arrandt brings suit on behalf of itself and other all Steiner customers who, from April 25, 1993 to the present, were charged the Environment Charge or other like charges on their invoices.

Arrandt also alleges the following additional facts with respect to its RICO claims. In Count I, Arrandt alleges that Steiner used the United States mails to further its fraudulent scheme by sending customers invoices with the charge and collecting the charge, that Steiner's activity constituted a pattern of racketeering under the RICO statute, namely mail fraud and theft, that Arrandt and the class constitute an enterprise with which Steiner is associated, and that Steiner controlled, directly or indirectly, the conduct of the enterprise's affairs through a pattern of racketeering activity by causing Arrandt and the class to pay the Environment Charge. In Count II, Arrandt makes the same allegations as in Count I, except as to the enterprise. Specifically, Arrandt alleges that Steiner and various other uniform and linen supply companies, including Cintas Corporation ("Cintas") and Super Linen Corporation ("Super Linen") were members of and/or were employed by or associated in fact with an enterprise comprised of Steiner, Cintas, Super Linen, other unidentified co-conspirator linen supply companies, and all persons and entities associated in fact in the scheme to deceive their customers and reap substantial unlawful profits from the imposition of charges known as the Environment Charge.

## DISCUSSION

### I. RICO Claims

Arrandt's RICO claims rest on the following statutory language:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To adequately plead a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) (quotation omitted). A plaintiff may not simply allege these elements "in boilerplate fashion; instead [plaintiff] must allege sufficient facts to support each element." *Goren*, 156 F.3d at 727. Steiner moves to dismiss both counts for failure to state a claim under Rule 12(b)(6).

#### A. Count I

Steiner first argues that Arrandt has failed to plead sufficient facts to support the "enterprise" element of a RICO claim in Count I. "[A] RICO complaint must identify the enterprise." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995)). The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4). The definition of "enterprise" encompasses two types of associations: (1) recognized legal entities and (2) extra-legal "associations in fact." *See United States* v.

4

*Turkette*, 452 U.S. 576, 581 (1988); *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). Either type must have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Jennings*, 910 F.2d at 1440.

The amended complaint alleges that "Plaintiff and the Class constitute the Enterprise within the meaning of 18 U.S.C. § 1961(4)." Am. Compl. ¶ 29. While the phrasing of this allegation suggests that Arrandt and the class members together constitute the enterprise, and, indeed, Steiner interprets the pleading this way, *see* Def.'s Mem. at 4-5, there are no allegations of an "association in fact" enterprise in Count I. Rather, the reasonable reading of Arrandt's allegation of enterprise in Count I is that Arrandt, because it is a corporation or other type of legal entity, is the enterprise, and, as class representative, Arrandt represents other such corporations or legal entities which, had any one of them brought suit separately, could have alleged it was the enterprise.[1] Because the RICO definition of an enterprise specifically includes "corporations" or "other legal entit[ies]," and because Arrandt is such a corporation or other legal entity, *see* Am. Compl. ¶ 8 (Richard A. Arrandt D.C. d/b/a Arrandt Healthcare and Rehabilitation Center, is "organized under the laws of the State of Illinois with its principal place of business located in Chicago, Cook County, Illinois" and is a "healthcare provider"), Count I adequately alleges an enterprise.[2]

---

[1]Indeed, Arrandt confirms this reading in its reply brief. *See* Pl. Resp., at 5, n.5 ("In [Count I], plaintiff . . . constitutes the enterprise [and] has brought this claim as a class action because each member has been injured in the same uniform manner, and plaintiff is the representative[.]").

[2]Arrandt also cites several cases holding that an entity can be both the enterprise and the victim of the alleged racketeering activity. *See, e.g.*, *United States v. Kovic*, 684 F.2d 512, 516 (7th Cir. 1982) (Chicago Police Department was an enterprise because "governmental or public entities fit within the definition of 'enterprise' for purposes of RICO" and could also be "the victim of the racketeering activity."); *LaSalle Bank Lake View v.*

5

Steiner next argues that Arrandt has failed to adequately allege the conduct element of a RICO claim in Count I. The conduct element requires a plaintiff to allege that the "person employed by or associated with [the] enterprise . . . conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The Supreme Court, interpreting this language, held that although the RICO person need not have primary responsibility for the enterprise's affairs, or even have a formal position in the enterprise, it must have "*some* part in directing the enterprise's affairs," *Reves* v. *Ernst & Young*, 507 U.S. 170, 179 (1993), or, in other words, have "participated in the operation or management of the enterprise itself." *Id.* at 183. For example, a person employed by the enterprise who is either upper management or who takes orders from upper management can be said to "operate" the enterprise, and a person not employed by the enterprise but "associated with" the enterprise can be said to "operate" the enterprise if he exerts some control over the enterprise, such as by bribery. *Id.* at 184.[3]

The amended complaint alleges that Steiner is "associated with the Plaintiff Enterprise . . . and . . . controlled, directly or indirectly, the conduct of the Enterprise's affairs through a pattern of racketeering activity by causing Plaintiff and the Class to pay the Environment Charge." Am. Compl. ¶ 30. Arrandt contends that this allegation adequately pleads the conduct element and relies on *Aetna Cas. Sur. Co.* v. *P & B Autobody*, 43 F.3d 1546 (1st Cir. 1994), to argue that merely causing the enterprise to pay fraudulent claims is sufficient to meet the *Reves* "operation

---

*Seguban*, 937 F. Supp. 1309, 1322 (N.D. Ill. 1996) (plaintiff bank may be enterprise and victim). However, Steiner indicated in its reply that it does not dispute this legal proposition. *See* Def.'s Reply, at 2.

[3]In *Reves*, an accounting firm which had failed to tell its client's board of directors of a farming cooperative certain facts concerning the valuation of another entity the cooperative had acquired was alleged to have conducted or participated in the affairs of the cooperative.

6

or management" test. However, in *Aetna*, the *Reves* test was not met merely because defendants (body shop owners who intentionally inflicted damage to cars and placed defective parts on them for appraisal) submitted fraudulent claims to the plaintiff enterprise, Aetna Casualty Surety Company ("Aetna"), which Aetna paid. Rather, in order for Aetna to pay the false claims, there had to first be an appraisal by Aetna appraisers, and, it was defendants' actions in causing Aetna's appraisers to approve false claims and conduct their appraisals in a manner contrary to Aetna's business practices that enabled defendants to exert control over a vital aspect of Aetna's business – the appraising, investigating, process and paying of insurance claims. *Id.* at 1559-60. Indeed, the Aetna appraisers "helped" the other defendants defraud Aetna and were also defendants in the RICO action. *Id.* at 1552. Thus, absent some indication that Steiner had involvement in the direction or control of Arrandt's business in a more material way than just demanding payment by sending an invoice, Arrandt's claim fails.[4] As it stands, the amended complaint alleges only that Steiner is providing a service for which it seeks and collects payment and thus is directing only its own, and not the plaintiff enterprise's, affairs. *See Reves*, 507 U.S. at 185 (an "outsider" cannot be liable for merely directing its *own* affairs); *United States v. Swan*, 250 F.3d 495, 499 (7th Cir. 2001) ("simply performing services for an enterprise . . . is not enough to subject an individual to RICO liability") (quoting *Goren*, 156 F.3d at 728). To accept

---

[4]The other cases relied upon by Arrandt are inapposite in that in those cases, the defendants were employees of the enterprise and not "outsiders," and in any event, it is clear that the defendant employees operated some part of the enterprise. *See, e.g., Kovic*, 684 F.2d at 513 (defendant Kovic was Chief of Electronics and Motor Maintenance Division of Chicago Police Department (the enterprise) and "[a]s Chief . . . was able to influence the selection of vendors both for purchases of new equipment and vehicles, and for maintenance and repair work [and] . . . personally approved all bills received from vendors for work done . . . and for items purchased . . . and his signature was required before payment checks were mailed to vendors."); *LaSalle Bank*, 937 F. Supp. at 1322 (defendant was an assistant teller manager for the bank (enterprise) and had power to create teller tickets, approve transactions on the tickets, and to order those working under her to process them); *United States v. Boylan*, 898 F.2d 230, 237 (1st Cir. 1990) (defendants were police detectives in the Boston Police Department (enterprise)).

Arrandt's reading would be to nullify the *Reves* test, which specifically rejected the interpretation that "almost any involvement in the affairs of an enterprise would satisfy the 'conduct or participate' requirement." *See Reves*, 507 U.S. at 178. Count I is, therefore, dismissed.

**B.     Count II**

Steiner moves to dismiss Count II, contending that, as with Count I, Arrandt has failed to adequately plead the "enterprise" element of a RICO claim. In Count II, the amended complaint alleges an "association in fact" enterprise consisting of Steiner, Cintas, Super Linen, other unidentified co-conspirator linen supply companies and "all persons and entities who were or are associated-in-fact in the scheme to deceive their customers and reap substantial unlawful profits from the fraudulent imposition of charges frequently known as Environment Charges." Am. Compl. ¶ 39. An association in fact enterprise is a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court described the extra-legal association in fact enterprise as a group of individuals "associated together for a common purpose of engaging in a course of conduct," *Turkette*, 452 U.S. at 583, and explained that it is shown "by evidence of an ongoing organization . . . and . . . by evidence that the various associates function as a continuing unit." *Id.* The Seventh Circuit has emphasized that "[t]he hallmark of an enterprise is a 'structure.'" *Richmond*, 52 F.3d at 645. And while a plaintiff need not allege "much structure . . . the enterprise must have some continuity and some differentiation of the roles within it." *Id.* Merely alleging a "group of people who get together to commit a 'pattern of racketeering activity'" is insufficient. *Id.* (quoting *United States v. Neapolitan*, 791 F.2d 489, 499-500 (7th Cir. 1986)).

The amended complaint fails to allege an association in fact enterprise because it has

failed to set forth any allegations from which to infer an organizational structure or the roles played by the various linen supply companies in the fraudulent scheme. The fact that Steiner, Cintas, Super Linen, and other unidentified linen supply companies all provide lawful linen supply services to their customers, Am. Compl. ¶ 41, by itself, is not enough. *See Richmond*, 52 F.3d at 645 (affirming dismissal where complaint alleged an association in fact enterprise consisting of "companies that provide a variety of services to the used car industry"). Moreover, the fact that Steiner and the other linen supply companies share the common purpose of reaping profits, Am. Compl. ¶ 42, conspire in the "scheme to deceive their customers and reap substantial unlawful profits from the fraudulent imposition of . . . Environment Charges," *id.* at ¶ 39, and that the scheme consists of two parts: (1) increasing the amount on plaintiff's monthly invoices by adding the Environment Charge and (2) grouping that charge with other taxes, does not aid Arrandt in identifying the enterprise without some further indication of the role each member had with respect to this scheme.

*Newscope Tech., Ltd.* v. *Ameritech Info. Indus. Servs., Inc.*, 1999 WL 199650 (N.D. Ill. Apr. 5, 1999), upon which Arrandt relies, is inapposite. Although there is language in *Newscope* that suggests that the defendants' two-part scheme consisting of (1) under-reporting of billable calls on plaintiffs' monthly statements; and (2) remitting a statement amount less than the amount properly owed to plaintiff, constituted a separate and distinct enterprise, *id.* at *2, the defendants in *Newscope*, unlike the alleged enterprise members in the instant case, were structured in a hierarchical manner with differentiated roles – namely, the Ameritech defendants performed billing services for the other defendants (local telephone companies), who supplied

9

services to plaintiffs' customers.[5] *Id.* Arrandt's amended complaint offers specific allegations only as to defendant Steiner's role in the scheme to defraud plaintiff Arrandt and the class through Steiner's invoicing and collection of fees from them, which is not enough to allege an association in fact enterprise. *See Richmond*, 52 F.3d at 645 ("To the extent the amended complaint offers some specific allegations concerning structure, continuity and common course of conduct, it does so not with respect to the . . . named enterprise[], but with respect to the . . . named defendant[.]"); *see also Stachon*, 229 F.3d at 676 (amended complaint failed to "offer the slightest sign of a 'command structure' separate and distinct from" defendant buying club). Thus, reading the amended complaint liberally, the most the court is able to infer is that Steiner and the various other linen supply companies conspired or agreed to impose the fraudulent charge on their customers, including plaintiff Arrandt and the class. However, a conspiracy to commit a pattern of racketeering activity is not the enterprise. *Stachon*, 229 F.3d at 676 ("When we liberally construe the allegations in the amended complaint, the most Appellants may be able to establish is a pattern of racketeering activity through the purported scheme to defraud customers. To withstand [the] motion to dismiss, however, Appellants must present something more than this and assertions of conspiracy[.]"); *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999) (affirming dismissal of RICO complaint for failure to allege an enterprise where group

---

[5]Other cases cited by Arrandt are likewise inapposite in that they too alleged facts from which to infer a structure to the association in fact enterprise. *See, e.g., United States v. Torres*, 191 F.3d 799, 806 (7th Cir. 1999) (indictment adequately alleged an association in fact enterprise where in addition to the purpose of the enterprise and who participated in it, indictment set forth what those participants did to facilitate the enterprise); *Montgomery Wards, L.L.C. v. Mease*, 2000 WL 556758, *3 (N.D. Ill. May 1, 2000) (complaint adequately alleged association in fact enterprise where it specified the different roles each defendant had in the fraudulent invoicing scheme); *Hexagon Packaging Corp. v. Manny Gutterman & Assocs., Inc.*, 1997 WL 323501, *1, *14 (N.D. Ill. June 9, 1997) (complaint adequately alleged association in fact enterprise where in addition to providing details of alleged scheme to misappropriate trade secrets it provided details of each defendant's distinctive role in the association in fact).

10

of unrelated individuals and corporations allegedly got together to defraud plaintiff). And alleging in conclusional fashion that the association in fact enterprise "has and had an ascertainable structure, and a continuity of structure and personnel" adds nothing. *Goren*, 156 F.3d at 727 (alleging RICO elements "in boilerplate fashion" is insufficient).

Steiner also argues, and the court agrees, that Count II fails to adequately allege the "conduct" element, which requires that Steiner, the RICO person, conduct the affairs of the alleged association in fact enterprise. Although the amended complaint alleges that Steiner is employed by or is associated with the association in fact enterprise and controls the conduct of the enterprise by "causing Plaintiff and the Class to pay the Environment Charge," Am. Compl. ¶ 43, the same pleading deficiencies that undermine Arrandt's attempt to plead an association in fact enterprise (lack of specific allegations from which to infer that the members are organized in a unit with differentiated roles) also dooms Arrandt's attempt to plead that Steiner conducts the affairs of such association in fact enterprise. There is nothing in the amended complaint from which to infer that Steiner directs the other members of the enterprise, takes orders from the other members, or controls the enterprise's affairs in a way that is distinct from merely directing its own affairs. *See Reves*, 507 U.S. at 185 (an "outsider" cannot be liable for merely directing its *own* affairs); *Richmond*, 52 F.3d at 646 (RICO "person" must be separate and distinct entity from the "enterprise" and must have committed the crime or fraud while conducting the enterprise's affairs and not merely its own business). Therefore, Count II is dismissed.

## II. State Claims

Because the court grants Steiner's motion to dismiss Arrandt's federal claims, it will dismiss the state law claims under 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons stated above, the court grants defendant's motion to dismiss [# 24] plaintiff's RICO claims (Counts I-II) and dismisses the pendent state law claims (Counts III-VII) pursuant to 28 U.S.C. § 1367(c)(3).

ENTER: *(signature)*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: August 3, 2001